Roy THOMAS, Appellant,

v.

UNITED STATES, Appellee.

Nos. 95–CF–912, 98–CO–1545.

District of Columbia Court of Appeals.

Argued Feb. 1, 2000.
Decided April 13, 2000.

Bernard S. Grimm, Washington, DC, for appellant.

L. Jackson Thomas II, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher and Leslie A. Gerardo, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY and FARRELL, Associate Judges, and KING, Senior Judge.

KING, Senior Judge:

Originally charged in a nine-count indictment.[1] Roy Thomas was convicted of first degree murder while armed at a second trial.[2] In his appeal from that conviction he argues that the trial court committed error in several respects by instructing the jury on conspiracy liability where there was no formal charge of conspiracy.

After Thomas was sentenced at the second trial, he noted a timely appeal to this court and collaterally attacked his conviction in the Superior Court pursuant to D.C.Code § 23–110, alleging ineffective assistance of counsel. The direct appeal was held in abeyance until the Superior Court ruled upon the § 23–110 motion. That motion was denied without a hearing, Thomas noted a timely appeal from the denial, and the two appeals have been consolidated. In his appeal from the denial of his § 23–110 motion he argues that the trial court erred by denying the motion to vacate the judgment without having conducted a hearing. We affirm in each appeal.

## I.

Just before midnight on September 21, 1990, four hooded young men, including Thomas, slowly drove past the corner of Eleventh and Lamont Streets, Northwest, where Delanta Toney and Dante Kennedy were conversing next to some telephone booths outside of Arthur's grocery store. A few minutes later, the four men were seen, about a block away, walking in a two by two formation along Eleventh Street from Park Road toward the corner, where Toney and Kennedy were standing. The hooded group passed by Harvey King, who observed that at least one of the men had a pistol. As they approached the corner, the four men, without speaking, lined up diagonally between the grocery store and the telephone booths, and walked as a group toward Toney and Kennedy. When the group neared the two men, Thomas spoke, saying either, "What's up with all you niggers?" or "Why [you] do that bitch shit?" Toney replied, "What you mean? What's up with you, Boo?" After that exchange, each of the four men drew weapons and fired. Toney was shot and injured. Kennedy was shot and killed. After the shootings, the four men ran away in an easterly direction toward Sherman Avenue. Thomas was later identified by witnesses as one of the shooters and the person who spoke to the victim.

At trial, the government proceeded upon a theory of liability based on *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489, *reh'g denied,* 329 U.S. 818, 67 S.Ct. 26, 91 L.Ed. 697 (1946), which permits an instruction on vicarious liability stemming from the existence of a conspiracy. At the government's request, the trial

---

**1.** The indictment against Roy Thomas, Lorenzo A. Irving, and James Tillman contained the following charges: first degree murder while armed (D.C.Code §§ 22–2401 & –3202); assault with intent to murder while armed (D.C.Code §§ 22–503, –2403 & –3202); assault with intent to kill while armed (D.C.Code §§ 22–501 & –3202); three counts of carrying a pistol without a license (D.C.Code § 22–3204(a)); and three counts of possession of a firearm during the commission of a crime of violence or dangerous of-

fense (D.C.Code § 22–3204(b)). The indictment did not charge conspiracy.

**2.** At the first jury trial, appellant was convicted of all counts except first degree murder while armed. The jury was unable to reach a verdict on that charge, and he was retried on that count at the second trial. This court affirmed the convictions from the first trial in a Memorandum Opinion and Judgment dated October 9, 1997.

court gave the conspiracy liability instruction, which is set forth, in its entirety, in the appendix, and which closely follows the standard Red Book instruction.[3] The trial court also gave the standard Red Book instruction on aiding and abetting.[4] As part of the conspiracy instruction, the trial court told the jury:

> A conspirator is a person who knowingly and intentionally agrees and combines with one or more persons to accomplish an unlawful purpose. A conspirator is responsible for offenses committed by his fellow conspirators if he was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of or as a natural consequence of the conspiracy.

## II.

Appellant contends (1) "the trial court constructively amended the indictment when it instructed the jury that it could convict the defendant of murder if it found that he was a member of a conspiracy to assault the decedent;" (2) "there was not a sufficient evidentiary predicate for a *Pinkerton* instruction on vicarious liability for co-conspirator acts;" and (3) "the jury instruction removed the government's burden of proof by requiring appellant's conviction for first degree murder while armed on mere proof of his membership in a conspiracy to commit simple assault." We consider each contention separately.

## A.

■ We first consider the claim that by giving the conspiracy instruction the court constructively amended the indictment. Because this issue was not raised in the trial court, we review for plain error. *See, e.g., Woodall v. United States,*

684 A.2d 1258, 1262 (D.C.1996). Conspirators are liable for criminal acts of co-conspirators "in furtherance of the unlawful project." *Pinkerton, supra,* 328 U.S. at 646, 66 S.Ct. 1180. Moreover, in proving the substantive criminal act, "[t]he criminal intent to do the act is established by the formation of the conspiracy." *Id.* In several instances, this court has previously recognized *Pinkerton* liability generally, to allow admission of co-conspirator statements. *See Akins v. United States,* 679 A.2d 1017, 1028 (D.C.1996); *Chavarria v. United States,* 505 A.2d 59, 62 (D.C.1986) (citing *United States v. Jackson,* 201 U.S.App.D.C. 212, 230, 627 F.2d 1198, 1216 (1980)). In applying the *Pinkerton* theory of liability in those circumstances, courts in this jurisdiction have repeatedly held that co-conspirators' statements may be admitted even though there is no conspiracy charge in the indictment. *See id.*

■ Although we have never decided the specific issue presented here—*i.e.,* whether, when there is no conspiracy charge in the indictment, the *Pinkerton* instruction may be given to prove a criminal defendant's participation in an underlying criminal offense—every federal court that has decided this question has held that such an instruction is proper.[5] Indeed, authority in favor of giving a *Pinkerton* instruction in these circumstances "is firmly established," *United States v. Jackson, supra,* 201 U.S.App.D.C. at 230, 627 F.2d at 1216. We have found no federal case law to the contrary and none has been cited to us. Even before *Pinkerton* was decided by the Supreme Court, at least one federal circuit court had held that "[a]lthough conspiracy be not charged, if it be shown by the evidence to exist, the act of one or more defendants in furtherance of the common plan is in law the act of all."

---

**3.** Criminal Jury Instructions for the District of Columbia, No. 4.93 (4th ed.1993).

**4.** Criminal Jury Instructions for the District of Columbia, No. 4.02 (4th ed.1993).

**5.** *See United States v. Jackson, supra,* 201 U.S.App.D.C. at 230, 627 F.2d at 1216; *United States v. Chairez,* 33 F.3d 823, 827 (7th Cir.1994); *United States v. Macey,* 8 F.3d 462, 468 (7th Cir.1993); *United States v. Jackson,* 876 F.Supp. 1188, 1204 (D.Kan.1994).

*Davis v. United States*, 12 F.2d 253, 257 (5th Cir.1926) (citations omitted).

In explaining the rationale for not requiring a formal conspiracy charge as a predicate for the *Pinkerton* theory, courts have reasoned that "[i]ndictments do not recite the government's theory of proof, which is what the *Pinkerton* theory is." *United States v. Edmond*, 288 U.S.App. D.C. 17, 25, 924 F.2d 261, 269, *cert. denied*, 502 U.S. 838, 112 S.Ct. 125, 116 L.Ed.2d 92 (1991); *see also Chairez, supra* note 5, 33 F.3d at 827 ("[T]he absence of a conspiracy charge does not preclude the district court from applying a *Pinkerton* theory to the gun charge if the evidence so suggests.") (citing *Macey, supra* note 5, 8 F.3d at 468). Thomas challenges this reasoning, arguing that "vicarious liability under a conspiracy theory is not merely a theory of prosecution which does not require grand jury action, similar to aiding and abetting."

█ We reject this argument because, in agreement with the authorities cited, we are persuaded that *Pinkerton* liability does not offend the grand jury clause, even absent a conspiracy charge in the indictment.[6] In support we rely upon our own cases where we have observed that the grand jury clause "requires that (1) the accused shall be apprised of the charges so that he or she can adequately prepare a defense; (2) the indictment shall describe the crime with sufficient specificity to enable a defendant to protect against future jeopardy for the same offense; and (3) the defendant shall be tried only on the charges specified in the indictment, in order to assure that the prosecutor or court will not alter the charges to fit the proof. . . . In short, a conviction must be based on an offense proved at trial and fully alleged in the indictment." *Ingram v. United States*, 592 A.2d 992, 1005 (D.C. 1991) (citations and internal quotations omitted). Thomas concedes that the first and second requirements are not at issue here. As to the third, we emphasize that Thomas was convicted of first degree murder while armed, not conspiracy; the existence of a conspiracy merely supplied some evidence of the crime of conviction. This case is not one in which Thomas was convicted of a charge that was not handed down by the grand jury in the indictment.[7] Accordingly, by proceeding on a conspiracy theory, the government did not constructively amend the indictment. Hence, the requirements of the grand jury clause were not violated here.

█ Further, in *Ingram*, where the theory of liability (aiding and abetting) was not disclosed in the indictment, we held there was no requirement that the theory be set forth because the particular theory proven was not an element of the offense charged. *Id.* at 1006–07. While we acknowledged that a constructive amendment of the indictment was possible "if the

---

6. The grand jury clause of the fifth amendment reads: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."

7. Thomas relies upon a number of cases where it was held that an indictment was constructively amended, usually resulting in a reversal of the conviction. No such amendment occurred here. In each case cited, the offense for which the defendant was convicted was factually distinct from the crime with which the defendant was charged. *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) (defendant was charged with interference with shipments of sand, but was convicted of interference with shipments of sand or steel); *Wright v. United States*, 564

A.2d 734 (D.C.1989) (indictment was based on false evidence that defendant committed rape, but defendant was convicted of aiding and abetting an unknown accomplice's rape); *Johnson v. United States*, 613 A.2d 1381 (D.C. 1992) (defendant was charged with forgery by altering signatures on checks, but was convicted of forgery by altering other portions of the checks); *Joseph v. United States*, 597 A.2d 14 (D.C.), *cert. denied*, 504 U.S. 928, 112 S.Ct. 1988, 118 L.Ed.2d 585 (1992) (defendant was charged with assault on one person with intent to kill that person, but convicted of an assault on one person with intent to kill a different person). In our view those cases are inapposite to the circumstances presented here.

indictment had specified a particular theory" of liability, and a different theory were proved at trial, we held there was no constructive amendment because the indictment "did not specify the means by which appellant aided and abetted the robbery." *Id.* at 1006. The same, of course, is true here. The conspiracy theory was not specified in the indictment; therefore, there was no "amendment," constructive or otherwise, of the indictment where the proof at trial showed the existence of a conspiracy.[8]

Additionally, on these facts, there was overwhelming evidence of aiding and abetting that supported a conspiracy theory. This is not a case where Thomas was convicted based solely on his role in planning some part of the encounter between the victims and the assailants or for participating in some aspect of a conspiracy removed from the actual commission of the murder. Instead, he was an active participant, perhaps even the leader. The fatal shot was fired by one of the assailants, and it does not matter, under either a conspiracy or an aiding and abetting theory, which of the shooters actually fired the fatal shot.[9] As to aiding and abetting, we have squarely held that proceeding under that theory does not constructively amend an indictment in circumstances where the indictment does not specify that the defendant was an aider and abettor. *Ingram, supra,* 592 A.2d at 1006.

■ Thomas argues, however, that conspiracy liability and aiding and abetting liability are different because the legislature has equated aiding and abetting liability with principal liability.[10] He urges that a different rule should apply for conspiracy liability because this jurisdiction does not equate conspiracy liability with principal liability in the same way. We recognize that under certain circumstances, distinctions can be drawn between conspiracy and aiding and abetting.[11] None of those distinctions apply in this case because the evidence showed that Thomas actively participated in the substantive crime and was

**8.** We also reject Thomas' claim that the facts presented do not sufficiently show that Thomas and his accomplices were engaged in a conspiracy. The testimony established that the gunmen slowly drove past their victims, and parked nearby. The four men were dressed in dark hooded clothing, and approached the victims two-by-two. The four men did not converse with each other as they approached the victims or when they lined up diagonally in front of the victims. After a brief verbal exchange between Thomas and one of the victims, which might have indicated a personal vendetta, all four men drew pistols and fired at the victims. After the shooting, all of the men fled together. This evidence provides a sufficient basis from which a jury could infer the existence of a conspiracy beyond a reasonable doubt. *See Blakeney v. United States,* 653 A.2d 365, 369 n. 3 (D.C.1995) (*quoting Gayden v. United States,* 584 A.2d 578, 580 (D.C.), *cert. denied,* 502 U.S. 843, 112 S.Ct. 137, 116 L.Ed.2d 104 (1991)); *see also Jackson v. Virginia,* 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**9.** It could not be established who fired the fatal shot because the evidence showed that at least three weapons had been fired, and the fatal wound could not be linked to any one of the weapons because the bullet causing death was not recovered.

**10.** *See* D.C.Code § 22–105. Other courts, in reaching the same result that we do, have analogized conspiracy and aiding and abetting in this context. In *Jacobs v. Scott,* 31 F.3d 1319, 1329 (5th Cir.1994), the court, in concluding that a defendant may be liable under a conspiracy theory absent a formal charge of conspiracy, relied directly on the law of aiding and abetting which states that "one who has been indicted as a principal may, on proper instructions, be convicted on evidence showing only that he aided and abetted the commission of the offense." *Id.* (quoting *United States v. Robles–Pantoja,* 887 F.2d 1250, 1255 (5th Cir.1989)).

**11.** *See Erskines v. United States,* 696 A.2d 1077, 1080–81 (D.C.1997). For example, a conspirator may be liable for foreseeable consequences of the conspiracy "regardless of [his] personal involvement ... in the [substantive] crime." *Id.* at 1080 (citing *Akins, supra,* 679 A.2d at 1031, 1027 n. 9). On the other hand, aiding and abetting does not require an agreement. *See, e.g., Pereira v. United States,* 347 U.S. 1, 11, 74 S.Ct. 358, 98 L.Ed. 435 (1954).

an active, if not the leading, participant in the commission of the murder as both an aider and abettor and a co-conspirator. In *Ingram*, we held that there is no constructive amendment of an indictment unless "the evidence and instructions ... introduce new facts or broaden the base for possible conviction." *Id.* at 1008. Here, appellant's guilt of the underlying charge could have been based on a theory of aiding and abetting as well as a theory of conspiracy. For that reason, the evidence and the instructions did not broaden the possible grounds for conviction because they were based on the same facts, which in these circumstances support both a theory of conspiracy and a theory of aiding and abetting.

### B.

▮ Thomas also contends that based on the instructions the jury could have convicted him of first degree murder while armed upon a finding that he had only conspired to commit an assault.[12] The instructions described the first of three elements that had to be proven beyond a reasonable doubt: "[T]hat on or about September 21, 1990, an agreement existed between two or more people to commit the crime of assault on the victim in this case." The instruction further stated that "the object of the conspiracy was to commit an assault on a person." On the basis of this passage, appellant argues that "[w]here, as here, the offense that is the object of the conspiracy [*i.e.*, assault] and the crime charged are different offenses, mere proof of membership in a conspiracy does not satisfy the government's burden to prove the essential elements of the crime charged." Thus, appellant argues that the

instructions improperly lessened the government's burden of proof, denying him due process. *See Sullivan v. Louisiana*, 508 U.S. 275, 277–78, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (citing *Patterson v. New York*, 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)). We disagree.

▮ "When reviewing a jury instruction for an alleged error, this court should consider the instruction as a whole in the context of the entire charge." *Green v. United States*, 718 A.2d 1042, 1058 (D.C.), *cert. denied*, 526 U.S. 1011, 119 S.Ct. 1156, 143 L.Ed.2d 222 (1999) (citations omitted). The trial court began the substantive instructions with a reading of the indictment and a definition of the crime of first degree premeditated murder. The instructions cited by appellant were given in the context of describing *Pinkerton* liability. In the concluding instructions the court stated, *inter alia*, that the defendant could be found guilty "[o]n the alternative theory that he was a member of a conspiracy to assault the victim, which assault included the intent to kill the victim which resulted in the death of the decedent being inflicted by one of the members of the conspiracy under circumstances satisfying the elements for the offense of first degree murder, premeditated." Thus, the instructions, as a whole, informed the jury that conviction under the conspiracy theory could rest upon a finding that the conspirator intended to, and did, commit a premeditated first degree murder as that had been defined. To the extent that conspiracy was discussed as an alternative theory of liability, the trial court made clear that the assault that was the object of the conspiracy was an assault with intent to kill, and not a simple assault.[13] Therefore,

---

12. The government argues that this issue was not preserved. Our review of the record persuades us otherwise. *See Russell v. United States*, 698 A.2d 1007, 1012 (D.C.1997).

13. We note that although we have in other cases distinguished between the offense of an assault with intent to murder ("AWIM") and an assault with intent to kill ("AWIK"), that distinction does not affect the outcome here.

*See Willis v. United States*, 692 A.2d 1380, 1382 (D.C.1997) (citing *Howard v. United States*, 656 A.2d 1106, 1115 n. 10A (D.C. 1995)). First, the issue was not raised by Thomas before the trial court or here. Moreover, AWIM requires the absence of mitigating circumstances but intent may be supplied by the existence of malice, while AWIK requires a *specific intent to kill* but does not

reviewing the instructions in their entirety, we are satisfied that the jury was not allowed to reach a verdict based upon anything less than that required to establish first degree premeditated murder.[14]

### III.

■ Finally, Thomas contends that his trial counsel was ineffective primarily because he failed to appreciate the government's theory of the case, and thus, did not respond accordingly. Specifically, Thomas maintains that (1) "counsel performed deficiently where he failed to understand the government's theory of the case until it rested" and was "ignoran[t] of the government's primary theory of the case;" (2) Thomas was prejudiced by counsel's failure to challenge the government's proceeding on that theory; (3) counsel provided a "pro forma summation;" (4) counsel "fail[ed] to request a special unanimity instruction;" and (5) "counsel failed to challenge a flawed expert opinion." Because we sustain the government's use of the uncharged conspiracy to prove some of the elements of the crime of first degree murder while armed, we reject Thomas' first three arguments (including their subparts) because there has been no showing of prejudice. See Strickland v. Washington, 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of prejudice ... that course should be followed."). We also reject Thomas' claim that counsel was deficient for not requesting a unanimity in-

struction because he was not entitled to a unanimity instruction, as only one incident was involved and a jury is not required to agree on a theory of liability. See Tyler v. United States, 495 A.2d 1180, 1182 (D.C. 1985) (citation omitted). Finally, Thomas also argues that his counsel should have challenged the firearms expert; the trial court found that had he done so, it might have strengthened the government's case. There is no basis for overturning that finding.

No hearing is required to resolve motions filed pursuant to D.C.Code § 23–110 if the matter can be resolved on the record as was the case here. Ready v. United States, 620 A.2d 233, 234 (D.C.1993). Therefore, we discern no error on the part of the trial court.

### IV.

Accordingly, the judgments on appeal are hereby affirmed.

*So ordered.*

### *APPENDIX*

The trial court gave the following instructions regarding *Pinkerton* liability:

A conspirator is a person who knowingly and intentionally agrees and combines with one or more persons to accomplish an unlawful purpose. A conspirator is responsible for offenses committed by his fellow conspirators if he was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of or as a natural consequence of the conspiracy.

---

require absence of mitigating circumstances. *Id.* In this case, these distinctions actually weigh in Thomas' favor. The instruction on AWIK required the jury to find a specific intent to kill, but it did not have to find an absence of mitigating circumstances. The government did prove, however, that there were no mitigating circumstances that would lessen this offense to something less than murder. Thus, even if the trial court erred by

instructing that the assault was an AWIK, rather than AWIM, that error worked to Thomas' benefit.

14. Thomas also contends that part of the agreed upon instruction was omitted. Counsel did not object to the claimed omission, and there was no plain error. See Woodall, supra, 684 A.2d at 1262.

Therefore, if you find beyond a reasonable doubt that the government has proved that the defendant Roy Thomas was a member of a conspiracy at the time that one of his fellow conspirators committed the offense charged, then you should find him guilty of first degree murder while armed, premeditated as charged in the indictment.

To find the defendant guilty on this legal theory you must be convinced that the government, that is the prosecutor, has proved each of the following three elements beyond a reasonable doubt:

One, that on or about September 21, 1990, an agreement existed between two or more people to commit the crime of assault on the victim in this case. This does not have to be a formal agreement or plan in which everyone involved sat down together and worked out the details. On the other hand, merely because people get together and talk about common interests or do similar things does not necessarily show that an agreement exists to assault the person. It is enough that the government prove beyond a reasonable doubt that there was a common understanding among those who were involved to commit the crime of assault against the person. So the first thing that must be shown is the existence of an agreement.

Two, that the government must prove that the defendant intentionally joined that agreement and thus was a member of that conspiracy. It is not necessary to find he agreed to all the details of the crime or that he even knew the identity of all the other people the government has claimed were participating in the agreement. A person may become a member of a conspiracy even if that person agrees to play only a minor part as long as that person understands the unlawful nature of the plan and voluntarily and intentionally joins in it. But mere presence at the scene of the agreement or of the crime or merely being with the other participants does not show that the defendant knowingly joined in that agreement and in the conspiracy. Also unknowingly acting in a way that helps the participants or merely knowing about the agreement itself without more does not make the defendant a part of the conspiracy. So the second thing that must be shown is that the defendant was a part of the conspiracy.

Three, that the government must show that one of the people involved in the conspiracy did something for the purpose of carrying out the conspiracy. This something is referred to as an "overt act." While the overt act may be an illegal act the government is not required to prove the overt act was illegal. Indeed even a legal act done to carry out a conspiracy, satisfies the requirement of an overt act. The government must show that one of the people involved in the conspiracy did an overt act in order to carry out the conspiracy.

In order to find the defendant guilty on this legal theory you must unanimously agree on at least one overt act that was done. A conspiracy can be proved indirectly by facts and circumstances which lead to a conclusion that a conspiracy existed. The government's burden is to prove such facts and circumstances existed and lead to that conclusion in this particular case.

In deciding whether an agreement existed, you may consider the acts and statements of all the alleged participants. In deciding whether defendant became a member of that conspiracy, you may consider only his acts and statements. In summary, a conspiracy is a partnership in crime.

For you to find the defendant guilt on this legal theory, the government must prove three things beyond a reasonable doubt.

First, that on or about September 21, 1990, there was an agreement to assault the victim in this case.

Second, that the defendant intentionally joined in that agreement and became a member of that conspiracy.

And third, that one of the people involved in the conspiracy did an overt act in furtherance of the conspiracy.

As the object of the conspiracy was to commit an assault on a person, it becomes necessary for me to define an assault for you. The essential elements of the offense of assault, each of which the government must prove beyond a reasonable doubt are:

One, that the defendant made an attempt or effect with force or violence to injure another person.

Two, that at the time the defendant made the attempt or effort he had the apparent present ability to injure that person.

And three, that he made the attempt or effort voluntarily and on purpose, not by mistake or accident.

Injury means any physical injury, however small, including a touching offensive to a person of reasonable sensibility. Injury also means physical injury however great. And thus an assault as an object of a conspiracy may include an assault with intent to kill.

\* \* \*

The defendant has been charged with first degree murder while armed, premeditated. There was been evidence in support of the charge on alternative legal theories.

\* \* \*

On the alternative theory that he was a member of the conspiracy to assault the victim, which assault included the intent to kill the victim which resulted in the death of the decedent being inflicted by one of the members of the conspiracy under circumstances satisfying the elements for the offense of first degree murder, premeditated.