UNITED STATES, Appellee,

v.

Jerry W. JONES, Specialist U.S. Army, Appellant.

No. 64,105.
CM 8900331.

U.S. Court of Military Appeals.

Submitted Aug. 6, 1990.

Decided March 27, 1991.

For Appellant: *Colonel Robert B. Kirby, Lieutenant Colonel Russell S. Estey, Captain Brian D. Bailey, Captain Lauren B. Leeker* (on brief).

For Appellee: *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Major Martin D. Carpenter* (on brief); *Captain George R. Johnson.*

*Opinion of the Court*

COX, Judge:

Contrary to appellant's pleas, a military judge sitting as a general court-martial convicted him of one specification of wrongful distribution of cocaine, a violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. The sentence, extending to dishonorable discharge, partial forfeitures for 36 months, reduction to E–1,

and 3 years' confinement, was approved by the convening authority and affirmed by the Court of Military Review in a short-form opinion.

We granted appellant's petition for review to consider whether the military judge erred by receiving evidence of uncharged misconduct.[1] Finding no error, we affirm the findings and sentence.

The Government charged that on or about October 4, 1988, appellant wrongfully distributed some amount of cocaine at a location known as "The Corner" in Alexandria, Louisiana, a town some distance from Fort Polk, appellant's duty station. Prior to pleas, defense counsel moved *in limine* to exclude evidence of other distributions of drugs by appellant. The basis of the motion was that the evidence ran afoul of Mil.R.Evid. 404(b), Manual for Courts–Martial, United States, 1984, which generally excludes evidence of "other crimes, wrongs or acts" to show that a "person acted in conformity therewith."

Appellant vigorously challenged the identity of the person who sold drugs to Private C, the informant. Prior to trial, defense counsel served the Government with notice of an alibi defense.[2] In addition, the identification question was raised during cross-examination of Private C, both on this issue and on an unrelated matter dealing with a photographic line-up. Defense counsel also cross-examined Special Agent M, the agent who controlled the transaction, at some length as to his certainty of his identification of appellant. Finally, appellant presented a number of witnesses and other evidence tending to show that he had been at football practice at Fort Polk as late as one-half hour prior to the transaction.

Succinctly summarized, the evidence the Government sought to introduce would have shown that Private C, as well as other soldiers—Private First Class A and Special-ist B—had previously purchased drugs from appellant at "The Corner." The scenario was essentially the same. The potential purchaser would drive through the area, slow down, and appellant would approach the vehicle and inquire if the individual wanted to buy drugs. The Government's theory of admissibility was that this evidence (1) would identify appellant as the seller and (2) rebut his alibi.

Concerning the uncharged misconduct the military judge found:

One, I find that the corner of 6th and John Thomas in Alexandria, Louisiana, is a unique place, where drugs are sold by young black males acting like car hops at the old neighborhood fast food establishments.

Two, that the accused was one of the "car hops" at "The Corner" at that corner, that sold drugs during the period of time proximate to the charges.

Three, that it was common knowledge among drug users in the accused's unit; that it was likely that drugs could be obtained from the accused by driving to "The Corner."

Four, that if you wanted to buy drugs from the accused after hours, you would more likely find him at "The Corner," than any other place.

Five, that the accused bragged to Specialist [B] that he, the accused, made money on "The Corner." And when he was finished with this criminal proceeding, he would return to make money there.

Six, that the accused viewed "The Corner" as his principal place of business.

Seven, that the identification of the accused as the one who sold cocaine to Private [C] in the presence of CID Agent [M] is at issue.

Eight, that evidence concerning the prior drug sales at "The Corner" and the relevant testimony of Specialist [B] con-

---

1. The issue granted review was:
   WHETHER THE MILITARY JUDGE ERRED TO APPELLANT'S PREJUDICE BY ALLOWING THE GOVERNMENT TO PRESENT EVIDENCE OF OTHER CRIMES TO SHOW THAT APPELLANT ACTED IN CONFORMITY THEREWITH ON THE OCCASION IN QUESTION.

2. See *RCM 701(b)(1), Manual for Courts–Martial, United States, 1984.*

cerning the accused's statement of making money at "The Corner" are relevant to the identification of the accused as the one who sold drugs to Private [C] on or about 4 October 1988 to rebut the defense of alibi.

Nine, that such probative value of the identification of the accused as the one who sold drugs to Private [C] outweighs the prejudicial effect on the accused.

And ten, as such, I will allow the Government to present evidence concerning drug transactions and conversations about "The Corner" to rebut the defense of alibi should that defense be raised.

■ Mil.R.Evid. 404(b) limits the introduction of uncharged misconduct to certain specific purposes. *United States v. Ferguson*, 28 MJ 104 (CMA 1989); *United States v. White*, 23 MJ 84 (CMA 1986). Among these is to show the identity of the accused by demonstrating a common plan or scheme or *modus operandi* for committing such crimes. *Cf. United States v. Brannan*, 18 MJ 181, 184 (CMA 1984). Furthermore, if an accused claims that he was misidentified, as he does here, the witness' prior dealings with him, including prior circumstances and transactions, are relevant and probative to demonstrate that the identification is accurate. However, as a precursor to such a determination, the Government must satisfy the military judge that (1) the evidence reasonably demonstrates that the accused committed the acts sought to be introduced; (2) the evidence makes a fact at issue "more" or "less probable"; and (3) the potential for prejudice is exceeded by the probative value of the evidence. *United States v. Reynolds*, 29 MJ 105, 109 (CMA 1989); *United States v. Hicks*, 24 MJ 3 (CMA), *cert. denied*, 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 55 (1987).

■ The first criterion for admissibility is satisfied relatively easily in this case. The Government need only show that a trier of fact could reasonably conclude that the accused did commit the act sought to be introduced. *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). In this case, two witnesses testified that appellant had sold them controlled substances at "The Corner." This evidence, if believed, would be sufficient to establish the existence of those acts.[3]

■ Secondly, it is clear that the question of identity was squarely before the trier of fact on the merits of the case. Defense counsel had served an alibi notice on the Government prior to trial. He presented substantial evidence to prove the alibi, *i.e.*, that it was unlikely that appellant could have traveled to Alexandria, Louisiana, between the time he was seen on Fort Polk and the time of the sale.[4]

Finally, he closely questioned M as to whether the agent was certain of his identification, suggesting that he might have been mistaken or that he did not have a good look at the individual who actually sold cocaine to Private C.

By contrast, the military judge excluded evidence that appellant had sold cocaine at other locations to Specialist B. As he found, there was no showing that these acts tended to make the identity of appellant as the person distributing cocaine at "The Corner" on the night in question "more" or "less probable." Rather, they were irrelevant. *See* Mil.R.Evid. 401, Manual, *supra.*

Further, the military judge specifically ruled that the Government could not present such evidence *unless* the defense raised the issue. By this action, he appropriately prevented any adverse impact

---

3. At trial, the defense argued that the evidence of the uncharged distributions was not sufficiently similar to constitute a "fingerprint" of the operations linking those acts to appellant and to the alleged distribution charged herein. Like the military judge, we are satisfied that the acts were sufficiently analogous to warrant their admission. *See United States v. Brannan*, 18 MJ 181 (CMA 1984).

4. Defense counsel opened his summation with the observation that "the most convenient place to start [his argument] is with just an old adage. You can't be in two places at the same time. That's the basis for an alibi defense."

from being drawn from the evidence until the issue of identity was clearly joined by appellant. *Cf. United States v. Reynolds, supra* at 110; 2 Wigmore, *Evidence* § 307 (Chadbourn rev.1979); *see also* S. Saltzburg, L. Schinasi, D. Schlueter, *Military Rules of Evidence Manual* 362 (2d ed. 1986).

The only remaining issue is whether the potential for prejudice outweighed the probative value of this evidence. Mil.R.Evid. 403. Here the military judge specifically performed the balancing test required *on the record* and concluded that the evidence should be received. We agree with his determination.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Senior Judge EVERETT concur.