UNITED STATES, Appellee,

v.

Samuel G. BROWNING, Staff Sergeant,
U.S. Army, Appellant.

No. 99–0417.
Crim.App. No. 9601041.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 2, 2000.

Decided Aug. 31, 2000.

Effron, J., filed opinion concurring in part and in result.

Sullivan, J., filed opinion concurring in result.

GIERKE, J., delivered the opinion of the Court, in which CRAWFORD, C.J., and COX, S.J., joined. EFFRON, J., filed an opinion concurring in part and in the result. SULLIVAN, J., filed an opinion concurring in the result.

For Appellant: *David P. Sheldon* (argued); *Mary Price* and *Captain Steven P. Haight* (on brief); *Captain Paul J. Perrone.*

For Appellee: *Major Patricia A. Ham* (argued); *Colonel Russell S. Estey* and *Lieutenant Colonel Eugene R. Milhizer* (on brief); *Captain Arthur J. Coulter.*

Judge GIERKE delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of larceny (12 specifications) and filing false documents for the purpose of obtaining payments of claims against the United States (10 specifications), in violation of Articles 121 and 132, Uniform Code of Military Justice, 10 USC §§ 921 and 932, respectively. The adjudged and approved sentence provides for a dishonorable discharge, confinement for 10 years, total forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed in an unpublished opinion.

This Court granted review of the following issues:

## I

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY NOT EXCLUDING, UNDER MIL.R.EVID. 403 AND 404(b), EVIDENCE OF THE MISCONDUCT OF OTHER ACTORS.

## II

WHETHER THE MILITARY JUDGE COMMITTED REVERSIBLE ERROR BY ADMITTING EVIDENCE OF AN UNCHARGED CONSPIRACY AND BY REPEATEDLY INSTRUCTING THE MEMBERS ON APPELLANT'S LIABILITY AS A CO–CONSPIRATOR.

## III

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION IN PER-MITTING TRIAL COUNSEL TO PRESENT EVIDENCE THAT APPELLANT HAD THREATENED THE LIFE OF THE KEY PROSECUTION WITNESS.

## IV

WHETHER THE MILITARY JUDGE ERRED IN REFUSING THE DEFENSE THE OPPORTUNITY TO PRESENT CERTAIN WITNESSES AND CERTAIN TESTIMONY THAT SUPPORTED THE DEFENSE'S THEORY OF THE CASE.

For the reasons set out below, we affirm.

## ISSUES I, II, AND III: EVIDENCE OF UNCHARGED MISCONDUCT

### Factual Background

The prosecution theory was that appellant, in his capacity as noncommissioned officer-in-charge of the 3d Armored Cavalry Regiment Comptroller's Office, participated with several soldiers in a fraudulent temporary-duty (TDY)-travel scheme. Appellant or one of his subordinates in the Comptroller's Office would authorize issuance of travel orders for bogus TDY trips or would create bogus receipts reflecting travel expenses. Various soldiers involved in the scheme would then use these bogus documents to fraudulently establish their entitlement to compensation for travel expenses.

Ultimately, one of appellant's subordinates, Private (PVT) Joncoaltz, who was then a Staff Sergeant (SSG), confessed his own involvement in the scheme and implicated others, including appellant. The defense theory was that PVT Joncoaltz framed appellant.

Before the trial began, the Government notified the defense, in accordance with Mil. R. Evid. 404(b), Manual for Courts–Martial, United States (1995 ed.) * that it intended to introduce evidence that appellant "engaged in an extensive conspiracy with [then-]SSG Joncoaltz, SSG Benzien, and CPT [Captain] Demary to steal TDY funds"; that he "helped PVT Bradley 'beef up' a TDY settle-

---

* All Manual provisions are cited to the version applicable at trial. The 1998 version is un- changed, unless otherwise indicated.

ment"; and that he "twice threatened to kill SSG Joncoaltz if he ever revealed the fraudulent TDY conspiracy." The defense made a motion in limine, asking the military judge to preclude the Government from introducing this evidence. After hearing the testimony of PVT Joncoaltz and PVT Bradley at an Article 39(a), UCMJ, 10 USC § 839(a), session, the military judge denied the defense's motion in limine as to this evidence. The military judge found that this proffered testimony was admissible under Mil.R.Evid. 404(b) for a proper purpose, *i.e.*, to show knowledge, plan, intent, and opportunity. In addition, after applying the balancing test of Mil.R.Evid. 403, the military judge found that the probative value of the proffered testimony was not substantially outweighed by the danger of unfair prejudice.

During the prosecution case-in-chief, PVT Bradley testified that, in 1993, he returned from a TDY trip and made a comment to appellant that he was "worried about trying to break even on my TDY trip." Appellant created a bogus lodging receipt for Bradley, which allowed Bradley to receive more money than he should have received.

On cross-examination, PVT Bradley testified that he was convicted of stealing "a little over $10,000" by filing false TDY claims during 1994. His co-actor in these thefts was PVT Joncoaltz, who told him that the fraudulent TDY scheme involved "[j]ust me and him."

PVT Joncoaltz, who had been convicted of stealing $80,000 through fraudulent TDY vouchers, testified that he stole about $31,000 in his own name, and the remainder on settlement vouchers for appellant, SSG Benzien, PVT Bradley, CPT Demary, and "various other individuals."

PVT Joncoaltz testified that he was having financial difficulties when he first started working for appellant and that appellant suggested that he could assist Joncoaltz with his financial problems by creating fraudulent TDY vouchers for travel that was never performed. He identified three vouchers on which appellant assisted him. He also identified eight fraudulent vouchers submitted by appellant, two submitted by SSG Benzien, and one submitted by CPT Demary. The participants in the scheme assisted each other by approving orders, providing information about hotels and transportation to be used to create bogus receipts, and creating bogus receipts using computers.

PVT Joncoaltz also testified that appellant threatened him twice. The first time, appellant drove to Joncoaltz's residence and told him that if the conspiracy was revealed or if Joncoaltz "screwed up by getting to [sic] greedy," Joncoaltz "could be found out in the desert dead." The second time, appellant and SSG Benzien came to Joncoaltz's residence, drove away with him in the vehicle, and told him that he "could be found in the desert dead with a bullet between [his] eyes and it could be done very easily due to the fact that Mexico is right here at the border and things can be bought very cheaply in Mexico."

After the challenged testimony was presented to the panel members, the military judge instructed the members as follows about the limited purposes for which the testimony could be considered:

> Members of the Court, you have heard evidence that Staff Sergeant Browning may have agreed to help Private Bradley to dummy up the travel vouchers and the documents necessary for him to submit a false document in order to collect money that he wasn't entitled to. You've heard testimony also, that Staff Sergeant Browning may have helped Private Joncoaltz dummy up documents and to assist him to prepare supporting documents. You've heard testimony that Benzien may have dummied up documents, and the documents contained in some of the travel documents submitted by Benzien may have been fraudulent. You may consider this evidence for [sic] very limited purpose. You may consider the evidence for its limited purpose of its tendency, if any, to establish a motive, opportunity, plan, knowledge, or absence of mistake, in these charges that Staff Sergeant Browning now faces. You may also consider [sic] for its limited tendency, if any, to establish that there was an agreement between Staff

Sergeant Browning and Private Joncoaltz, or Private Bradley, or Private Benzien, or with Captain Demary. You may not consider this evidence for any other purposes than those that I've just listed, and you may not conclude from this evidence that Staff Sergeant Browning is a bad person or has criminal tendencies, and that he therefore committed the offenses charged. You've also heard testimony that Staff Sergeant Browning and Benzien threatened Private Joncoaltz on two occasions. You may consider this evidence for a very limited purpose also. It may [sic] considered by you for the limited purposes of its tendency, if any, to establish that there was an agreement between the accused and Private Joncoaltz and/or an agreement between the accused and Benzien and Captain Demary. You may also use it for its tendency, if any, to establish a knowledge of guilt. You may not consider this evidence for any other purpose, and you may not conclude from the evidence that Staff Sergeant Browning is a bad person or has criminal tendencies, and that he therefore committed the offenses charged. Now, do you understand the limited purpose for which this information is [sic] may be considered by you?

(Affirmative response from the members)

Before the court members closed to vote on findings, the military judge repeated the same limiting instruction, using virtually identical language. In addition, he instructed them that they could consider the evidence "to prove the existence and participation of the accused in one or more conspiracies, that is agreements, to steal money from the United States Government."

The military judge again asked the members if they understood the instructions, and they again gave affirmative responses. Defense counsel expressed no objection to the judge's limiting instructions.

After instructing on the limited use of the evidence under Mil.R.Evid. 404(b), the military judge instructed, in accordance with a prosecution request, on the prosecution's theory of vicarious criminal liability. He in-

structed the members that appellant could be found guilty if he aided and abetted another in committing an offense. He also instructed that appellant could be found guilty if he was a member of a conspiracy and the actual criminal act was done by another conspirator in furtherance of the conspiracy.

At the conclusion of these instructions, defense counsel objected to the conspiracy instruction as misleading. He argued:

I object to the conspiracy instruction being given because I'm afraid that it's misleading the Panel into thinking that, even if for some reason they don't think Sergeant Browning actually committed these offenses, that if he somehow was involved in this, they could find him guilty of conspiracy, and he's not charged with that and I don't believe that that's a lesser included [sic].

The military judge then gave the following clarifying instruction:

Members of the Court, I gave an instruction concerning the liability of conspirators, co-conspirators for actions during the course of a conspiracy. I want to make it clear that Staff Sergeant Browning is not charged with a conspiracy. He's charged with larcenies. And he's charged with filing false claims, using a paper. Those are the offenses that are before you. Now, the Government has alleged, and they presented evidence, that there was an agreement, or there may have been an agreement, or there may have been several agreements that involved the commission of these offenses. Do you understand that?

(Affirmative response from the members)

And so the purpose of this instruction is to bring to your attention that, if a member is a part of a conspiracy, part of an agreement, and if during the course of that conspiracy, and before that party, before the accused soldier withdrawals [sic] from the conspiracy, one member, any member of that conspiracy commits some overt act that brings about the results of the conspiracy, the agreement, then that accused person is also responsible. Do you understand what I'm saying?

(Affirmative response from the members)

\* \* \*

Now, Members of the Court, before you find Staff Sergeant Browning guilty of larceny, any of the larcenies, or the violation–of–Article–132 offenses, you must be satisfied, beyond a reasonable doubt, that an offense is committed in furtherance of that conspiracy, or that offense was in [sic] an object of [sic] conspiracy. Now, I've been talking to you about this liability of co-conspirators. If you're satisfied, beyond a reasonable doubt, that at the time this offense was committed, Staff Sergeant Browning entered into and continued to be a member of an unlawful conspiracy, as I've defined that for you, and if you find, beyond a reasonable doubt, that this offense was committed while the conspiracy continued to exist and in furtherance of an unlawful conspiracy, or was an object of that conspiracy, then you may find Staff Sergeant Browning guilty of this offense, as a co-conspirator, even though he was not the person who actually committed the criminal offense.

At the conclusion of his instructions, the military judge asked if counsel for either side objected to any instructions or requested additional instructions. Defense counsel asked if a "spillover" instruction was given, received an affirmative response from the military judge, and then responded, "Then I have no objections."

In his argument on findings, trial counsel stated that "it's not our theory that he created all the [false] documents." Instead, he argued that "the bottom line with this is that, if you're in a criminal enterprise, you're responsible for the whole thing."

### Discussion

■ Appellant now asserts that the evidence was erroneously admitted under Mil. R.Evid. 404(b), because there was insufficient evidence that appellant committed the uncharged acts; and the probative value of the evidence of appellant's threat against PVT Joncoaltz was outweighed by its prejudicial impact. He also asserted that the evidence of a conspiracy and the military judge's instruction on conspiracy was an impermissible amendment of the charges. Because defense counsel did not object to the instructions on vicarious liability after the military judge gave a clarifying instruction, any defects in the instructions were waived unless they rise to the level of plain error. *See* RCM 920(f), Manual, *supra*; *United States v. Powell*, 49 MJ 460 (1998).

■ Mil.R.Evid. 404(b) "is a rule 'of inclusion rather than exclusion.'" It permits admission of relevant evidence of other crimes or acts unless the evidence "tends to prove only criminal disposition." *See United States v. Simon*, 767 F.2d 524, 526 (8th Cir.), *cert. denied*, 474 U.S. 1013, 106 S.Ct. 545, 88 L.Ed.2d 474 (1985).

■ In *United States v. Reynolds*, 29 MJ 105, 109 (1989), this Court adopted a three-pronged test for admissibility of "other acts" evidence under Mil.R.Evid. 404(b). First, such evidence must "reasonably support a finding by the court members that appellant committed prior crimes, wrongs, or acts[.]" Second, such evidence must make a " 'fact ... of consequence' ... 'more' or 'less probable[.]' " Third, its "probative value" must not be "substantially outweighed by the danger of unfair prejudice[.]" The standard of proof for the first prong is "quite low." *United States v. Dorsey*, 38 MJ 244, 246 (CMA 1993). "The Government need only show that a trier of fact could reasonably conclude that [appellant] did commit the act sought to be introduced." *United States v. Jones*, 32 MJ 155, 157 (CMA 1991), citing *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

In this case, PVT Joncoaltz testified that the acts occurred and that they were committed in furtherance of a conspiracy. His testimony, if believed, was sufficient to satisfy the first prong.

■ Regarding the alleged threats against PVT Joncoaltz, the military judge properly balanced the probative value against the prejudicial impact and gave the members a carefully crafted limiting instruc-

marijuana to Pedigo's home to be weighed. Merriman did not have his firearm with him at Pedigo's home. The appellate court held that it was impermissible for the prosecutor to argue and the trial judge to instruct the jury that they could find Pedigo guilty of Count 3 based either on his possession of his own firearms when Merriman brought the marijuana to his home or Merriman's possession of a firearm as he brought the marijuana from Arizona to Michigan in furtherance of the conspiracy. The court interpreted Count 3 of the indictment as limiting the firearms offense to the conduct alleged in Count 2, based on Count 3's reference to a specific event, "as alleged in Count 2 above." The court held that to permit the weapons offense to be expanded to Count 1 impermissibly broadened the indictment. *Id.* at 631. Because *Pedigo* is fact-specific, we do not consider it inconsistent with *Galiffa,* decided before *Pedigo* in the same circuit.

*Keller* also is fact-specific. Keller was charged with conspiring with two named individuals. The trial judge instructed the jury that they could convict if they found that Keller conspired with anyone. The appellate court held that the trial judge impermissibly expanded the indictment by implicitly adding the words, "with other named and unnamed conspirators" to the indictment. 916 F.2d at 636.

■ In appellant's case, he was charged with a number of specific offenses, some of which he allegedly committed personally and some of which he committed vicariously as a member of a conspiracy. Neither the Government nor the military judge changed the essential facts alleged. We hold that the military judge did not err by permitting the Government to prove some of the offenses on a theory of vicarious liability, even though a conspiracy was not specifically alleged on the charge sheet. Since we hold that there was no error at all, we do not reach the question of plain error regarding the instructions.

## ISSUE IV: EXCLUSION OF DEFENSE EVIDENCE

### Factual Background

The defense theory was that PVT Joncoaltz framed appellant. The defense theory was also that appellant made several legitimate TDY trips and that Joncoaltz used the information from those trips to create other bogus TDY trips in appellant's name.

Appellant sought to adduce the testimony of SSG Summerlin, the Operations Sergeant of 3d Squadron, 3d Armored Cavalry Regiment (3d ACR), that PVT Joncoaltz told him "not to worry about" a $6,000 TDY overpayment to another soldier since the overpayment "was to the soldier's benefit." Appellant argued that this evidence supported the defense theory that PVT Joncoaltz framed appellant by generating and filing fraudulent TDY documentation in appellant's name. According to defense counsel's offer of proof, PVT Joncoaltz did the same thing to appellant when appellant approached him about suspected TDY overpayments. The military judge asked defense counsel how he intended to link Joncoaltz's conversation with SSG Summerlin to the defense theory that Joncoaltz framed appellant. Defense counsel replied that he probably would do so through appellant's testimony.

After hearing the offer of proof, the military judge made a preliminary ruling that he would not admit SSG Summerlin's testimony concerning the $6,000 overpayment at that point in the trial. The military judge applied the Mil.R.Evid. 403 balancing test and found that the probative value of this evidence was "substantially outweighed by the danger of confusing the issues for the members." The military judge advised appellant, however, that he would reconsider his ruling if the defense subsequently established the relevance of the testimony and requested the military judge to reconsider. Although appellant subsequently testified in accordance with trial defense counsel's offer of proof, appellant did not ask the judge to reconsider his ruling.

Defense counsel proffered testimony from SSG Summerlin, as well as Sergeant First Class (SFC) Brown, that it was possible for one soldier to pick up another soldier's TDY check without having written authorization to do so. The military judge permitted this testimony.

The military judge permitted the defense to present the stipulated testimony of Mr. Martinez, a civilian employee of the finance office, that a check payable to appellant was returned to the finance office and all funds returned to the United States.

Defense counsel sought to adduce testimony from a Mr. Maloney that he had observed appellant access his own bank account without showing identification. Mr. Maloney's position and relationship to appellant were not mentioned in the defense proffer. Defense counsel argued this evidence was relevant to show that PVT Joncoaltz could have deposited the stolen TDY funds in appellant's bank account. Trial counsel asserted, without contradiction by the defense, that Mr. Maloney would testify only that appellant accessed a statement of the account and that Mr. Maloney could not testify whether appellant deposited or withdrew any money. The military judge applied the Mil.R.Evid. 403 balancing test and excluded Mr. Maloney's testimony at that point in the trial, ruling that whatever minimal relevance it had was "substantially outweighed by the danger of unfair prejudice [and] confusion of the issues." The military judge advised defense counsel, "Now, if you think it becomes relevant at a later point, raise it." The defense did not raise the issue again.

## Discussion

■ An accused has a constitutional right to present relevant evidence to defend against the charges. That right, however, "is not absolute." *United States v. Woolheater*, 40 MJ 170, 173 (CMA 1994). "Mil.R.Evid. 403 empowers a military judge to exclude relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" The burden is on the proponent of the evidence to show admissibility. *United States v. Shover*, 45 MJ 119, 122 (1996). If the military judge weighs the evidence in accordance with Mil.R.Evid. 403 and excludes it, "appellant has the burden of going forward with conclusive argument that the judge

abused his discretion." *Id.* at 122–23, quoting *United States v. Mukes*, 18 MJ 358, 359 (CMA 1984). We will not reverse unless appellant persuades us that there was a "clear abuse of discretion." *United States v. Johnson*, 46 MJ 8, 10 (1997).

■ Where a military judge makes a preliminary ruling excluding evidence but invites counsel to renew the request at a later time in the trial, counsel's failure to renew the request waives the issue. *United States v. Rockwood*, 52 MJ 98, 105 (1999); *see also United States v. Dollente*, 45 MJ 234, 240 (1996).

If the issue is not preserved, we review for plain error. *See United States v. Powell*, 49 MJ 460 (1998). The burden is on appellant to persuade us that there was plain error. *Id.* at 464–65.

■ Applying the foregoing principles, we hold that appellant did not preserve the issue by requesting the military judge to reconsider after being expressly invited to do so. Even assuming, *arguendo*, that the issue was preserved, appellant has not persuaded us that the military judge clearly abused his discretion. The proffered testimony of SSG Summerlin was of minimal relevance. The defense failed to establish a link between Joncoaltz's willingness to help another soldier defraud the United States and Joncoaltz's alleged scheme to frame appellant.

■ Likewise, the proferred testimony of Mr. Maloney fell short of supporting the defense theory. The fact that appellant could gain access to information about his account falls short of showing that PVT Joncoaltz could deposit stolen funds in appellant's bank account. Furthermore, Mr. Maloney's proffered testimony was double-edged: if the defense could show that Joncoaltz could deposit stolen funds in appellant's account, that fact would support the Government's theory that appellant and Joncoaltz were engaged in a conspiracy to steal money from the United States. The military judge's determination that this evidence should be excluded under Mil.R.Evid. 403 was clearly within the bounds of his discre-

tion. Thus, we hold that there was no error at all, much less plain error.

## DECISION

The decision of the United States Army Court of Criminal Appeals is affirmed.

EFFRON, Judge (concurring in part and in the result):

I agree with the result in this case, and with the analysis of Issue III. I disagree with the analysis of Issues I, II, and IV to the extent noted herein.

### Misconduct committed by others

Issues I and II address the consideration of misconduct by persons other than appellant. As the majority notes, applicable case law permits the misconduct of third parties to be considered as evidence against an accused under a theory of vicarious liability when the misconduct takes place in the course of a conspiracy to which the accused is a party.

The misconduct of others is relevant and admissible under the theory of vicarious liability of co-conspirators only to the extent that the evidence demonstrates that: (1) the act at issue was committed by a person who was a co-conspirator with appellant, and (2) the act was committed at a time that appellant was a participant in the conspiracy. At the outset, it is important to note that the record in the present case indicates that several of the fraudulent travel vouchers admitted into evidence against appellant by the military judge were not linked to appellant. PVT Joncoaltz testified that he did not personally create many of the vouchers that were admitted into evidence on the basis of his testimony and that he could only speculate that the documents contained either appellant's or SSgt Benzien's signatures.

With respect to appellant's relationship to any conspiracies, it is important to distinguish between the two primary types of conspiracy. The first type is a "wheel" or "circle" conspiracy, in which the person at the center (the hub) deals individually with two or more other persons (the spokes). In a "wheel" situation, there may be several con-

spiracies emanating from a single hub. If the accused is not at the hub, but is merely one of the spokes, then he or she is not a part of the conspiracies formed by the other spokes. The second type of conspiracy, a "chain" conspiracy, involves "successive communication and cooperation" between a person and the other actors. See 2 W. LaFAVE & A. SCOTT, SUBSTANTIVE CRIMINAL LAW § 6.5 at 99–102 (2d ed.1986).

The record does not demonstrate that the purported conspiracy or conspiracies were of a type that would make appellant liable for the misconduct of others. In particular, the record does not establish that the Government's evidence describes a "chain" rather than a "wheel" conspiracy. On the contrary, the record is consistent with the existence of a "wheel" conspiracy: it is entirely possible the misconduct at issue took place in the course of a "wheel" conspiracy with PVT Joncoaltz at the center of the conspiracy and with appellant possibly involved as a "spoke" in some, but not all, of the conspiracies emanating from the hub. See Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)(more than one conspiracy existed where the "hub" had "made fraudulent applications for loans ... on behalf of several persons, many of whom had no connection with one another"); see also United States v. Peoni, 100 F.2d 401, 403 (2d Cir.1938)(defendant found "not to be a co-conspirator with" other actor in "chain" where Government failed to "establish a 'concert of purpose' between" two actors). See La Fave, supra at 101, 100.

PVT Joncoaltz' testimony described his theft of $80,000 from the United States through fraudulent TDY vouchers. He noted that $31,000 was taken in his own behalf, and the remainder was stolen in connection with appellant, SSG Benzien, PVT Bradley, CPT Demary, and other individuals. Joncoaltz did not demonstrate that appellant was on each of the "spokes" represented by these separate conspiracies, nor did he demonstrate that there was a "chain" conspiracy. Likewise, the testimony of PVT Bradley and the documents relating to SSG Benzien did not establish that appellant was on each of

the spokes. Although PVT Bradley testified that appellant created one fake lodging receipt for him, Bradley stated that he submitted over $10,000 of fraudulent false TDY claims in a scheme that involved himself and Joncoaltz, with no mention of appellant's involvement. Documents reflecting SSG Benzien's fraudulent TDY trips were admitted as prosecution exhibits in appellant's case, but the record does not demonstrate what agreement, if any, existed with respect to SSG Benzien and appellant.

In short, the issue is not whether the limiting instructions provided by the military judge were adequate. The issue is the failure of the Government to present specific evidence linking each document admitted against appellant to a separate conspiracy in which he was a participant.

### Relevance of a defense witness

Issue IV concerns the decision of the military judge to preclude the testimony of a defense witness, Mr. Maloney, who would have presented evidence that he observed an instance in which a teller permitted appellant to obtain information regarding his bank account without requiring appellant to show identification. The military judge excluded this information on the ground that the evidence was more confusing than probative under Mil.R.Evid. 403.

Mr. Maloney's observation that appellant's bank did not always require identification for certain acts would have supported the defense's theory that PVT Joncoaltz could have deposited certain fraudulent TDY checks into appellant's bank account in order to frame appellant for the travel scheme. It is not apparent what confusion would be caused by the observation that the bank did not require identification for certain acts.

### Prejudice

Although I would hold that the military judge erred in admitting certain documentary evidence concerning the misconduct of others, I would not reverse on that ground. The Government presented overwhelming evidence of appellant's guilt on the charges, particularly in the form of deposits totaling

over $17,000 in his personal bank account from fraudulent vouchers in his name. In light of this evidence, I would conclude that the errors were not prejudicial under Article 59(a), UCMJ, 10 USC § 859(a). Likewise, I would hold that the military judge's exclusion of Mr. Maloney's testimony concerning the practices of the bank was not prejudicial under Article 59(a). I am confident that his testimony would have added little to the defense case because it would appear to be within the realm of common knowledge of the members that many banks do not require identification prior to acceptance of a deposit.

SULLIVAN, Judge (concurring in the result):

I agree that the lower appellate court's decision should be affirmed. However, I have some difficulty with the majority's joint treatment of the distinct legal issues in this case. I prefer a more direct analysis of the issues.

With respect to Issue I, I find no error because the evidence was properly admitted under Mil.R.Evid. 404(b) and because the probative value of this evidence was not substantially outweighed by any unfair prejudice under Mil.R.Evid. 403. *See United States v. Smith,* 52 MJ 337 (2000); *see generally* E. Imwinkelried, Uncharged Misconduct Evidence § 2:05 (1999). With respect to Issue II, I find no error in admitting proof of an uncharged conspiracy. *See United States v. Edmond,* 924 F.2d 261, 269 (D.C.Cir.1991). With respect to Issue III, I also find no error in admitting evidence that appellant threatened prosecution witnesses. *See, e.g., United States v. Monahan,* 633 F.2d 984, 985 (1st Cir.1980); *United States v. Gonzalez,* 703 F.2d 1222, 1223 (11th Cir.1983); *United States v. Hayden,* 85 F.3d 153, 159 (4th Cir. 1996). Regarding Issue IV, I would hold that the military judge erred in excluding this testimony under Mil.R.Evid. 403, but such error did not rise to the level of constitutional error nor did it otherwise prejudice his substantial rights in a material way. *Cf. United States v. Lewis,* 51 MJ 376, 383 (1999).