*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, GANNON, and FLINTOFT
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Dominique D. WILSON**
Private (E-1), U.S. Marine Corps
*Appellant*

**No. 202400373**

_____

Decided: 12 February 2026

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Ryan C. Lipton

Sentence adjudged 17 June 2024 by a general court-martial convened at Marine Corps Base Camp Lejune, North Carolina, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: confinement for 53 months, forfeiture of all pay and allowances, and a dishonorable discharge.[1]

For Appellant:
*Captain Colin P. Norton, USMC*

---

[1] Appellant was credited with 334 days of pretrial confinement credit.

For Appellee:
*Lieutenant Michael G. Osborn, JAGC, USN*
*Commander John T. Cole, JAGC, USN*

Senior Judge KISOR delivered the opinion of the Court, in which Judge GANNON and Judge FLINTOFT joined.

_____

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

_____

KISOR, Senior Judge:

Appellant was convicted, pursuant to his pleas, of two specifications of abusive sexual contact in violation of Article 120, Uniform Code of Military Justice (UCMJ); one specification of indecent conduct in violation of Article 134, UCMJ; four specifications of violating a lawful general order in violation of Article 92, UCMJ; and one specification of assault consummated by a battery in violation of Article 128, UCMJ. The military judge sentenced Appellant to confinement totaling fifty-three months, forfeiture of all pay and allowances, and a dishonorable discharge.[2]

Appellant asserts three assignments of error (AOEs) presented as follows: (1) did the military judge erroneously accept victim impact statements from the victim's parents when he erroneously found they were crime victims under Rule for Courts-Martial (R.C.M.) 1001(C)(2)(A); (2) is the sentence Appellant received inappropriately disparate with the sentence his co-actor received in a closely related case; and (3) is Appellant's sentence inappropriately severe. We find no prejudicial error and affirm.

## I. BACKGROUND

Based on allegations that arose, Naval Criminal Investigative Service (NCIS) agents investigated alleged misconduct within Infantry Training Battalion, School of Infantry, at Marine Corps Base Camp Lejeune in July of 2023. Over the course of its investigation, NCIS agents identified Appellant and Private A. as the two primary perpetrators of the misconduct to which Appellant

---

[2] Entry of Judgment.

ultimately pleaded guilty to. The misconduct included: touching a Marine's groin, publicly masturbating into a sex toy, swinging his exposed penis in front of another Marine who was sitting on a toilet, holding a Marine down by his arms and legs, waving a sex toy in another Marine's face, and using his hands to spread a Marine's buttocks and spitting on his anus, with the intent to abuse, humiliate, harass, and degrade him.

Both Appellant and Private A. were charged and subsequently pleaded guilty at general courts-martial. Appellant pleaded guilty to eight specifications of misconduct across six charges. There were six named victims on Appellant's charge sheet.[3]

Of the charges Appellant pleaded guilty to, Private A. was named as a co-actor in one specification of indecent conduct and one specification of violation of a general order, and he was present and participating in others. Acknowledging Private A.'s presence or assistance while Appellant committed these offenses, Appellant explained Private A's complicity in several of the offenses. In particular, Appellant described why he believed he was guilty to one of the charges in response to the military judge's direction, "[i]n your own words, I need you to tell me what happened."

> Well, it was me and [Private A.] wrestling him, Your Honor. And – [Private A.] had him in an armbar, I believe the headlock. And with – with how every – with just how, like, the nature of everyone's actions was. And my actions and his actions, Your honor, it just kind of led me to just pulling down his skivvy shorts, and spitting into his anus, Your Honor.[4]

Ultimately, Private A. pleaded guilty to five specifications across four charges of which Appellant was named as a co-actor in two specifications. Private A. came to a plea agreement with the convening authority first and agreed to provide substantial assistance in Appellant's investigation, prosecution, and sentencing. In exchange, Private A.'s sentence was limited to a bad-conduct discharge, total forfeiture of pay and allowances, and confinement between 12 to 36 months. The military judge sentenced Private A. to 33 months confinement. The convening authority further reduced Private A.'s confinement time by six months due to his cooperation against Appellant.

During the presentencing portion of Appellant's court-martial, one of the victims of abusive sexual contact, Private First Class (PFC) R., provided a victim impact statement through Victims' Legal Counsel (VLC). VLC submitted

---

[3] Charge Sheet.

[4] R. at 168.

unsworn victim impact statements from PFC R., PFC R.'s mother, and PFC R.'s father. The Defense objected to PFC R.'s parents' statements, arguing that the parents do not "qualify as victims under [Rule for Courts-Martial] 1001."[5] In response, VLC stated that PFC R.'s parents fit squarely within the definition of Rule for Courts-Martial (R.C.M.) 1001 because they suffered direct, emotional, and pecuniary harm.[6]

In particular, PFC R.'s father's victim impact statement initially discussed supporting his son's decision to join the Marine Corps and attending his son's boot camp graduation. However, the letter ultimately transitioned and focused on how Appellant's conduct had caused him "emotional terror" as a father, as well as resulted in a burdensome strain on his marriage and affected his ability to travel for work.[7]

PFC R.'s mother's victim impact statement compared her son's personality before and after Appellant's conduct. She largely discussed how the incident had impacted her son: he had "become withdrawn, unable to sleep, edgy, and anxious. . . . My boy was happy go lucky, making friends . . . but they took that away from him in July."[8] We observe that a portion also described the impact on her and her husband:

> This has hurt us financially due to the fact that we were having to go back and forth from Ohio to NC so often to make sure our son had the support he needed. He had no support other than us. Emotionally this has wrecked me. I have never felt so helpless as a parent or a person in general as I have during this entire process. The sleepless nights, the anxiety every single time the phone rings and [PFC R.'s] name comes up. I am afraid of what else might be happening with him.[9]

Relying on *United States v. Miller,*[10] the military judge agreed with VLC and permitted the submission of PFC R.'s parents' victim impact statements. Once admitted, the military judge noted these statements were not evidence

---

[5] R. at 279.

[6] R. at 279.

[7] Appellate Exhibit XXXIII at 6.

[8] Appellate Exhibit XXXIII at 7.

[9] Appellate Exhibit XXXIII at 7.

[10] *United States v. Miller*, 82 M.J. 788, 791 (N-M. Ct. Crim. App. 2022).

and that he would give these statements the appropriate weight they deserve.[11]

Appellant's plea agreement provided that the military judge would adjudge forfeiture of all pay and allowances and a dishonorable discharge. Additionally, the military judge had discretion to adjudge confinement between the range of 30 and 72 months.[12] The military judge ultimately sentenced Appellant to forfeiture of all pay and allowances, a dishonorable discharge, and concurrent confinement terms totaling 53 months.

## II. DISCUSSION

**A. The Military Judge Did Not Abuse His Discretion By Accepting Victim Impact Statements From the Victim's Parents Under R.C.M. 1001(C)(2)(A). Even Assuming Error, Appellant Was Not Materially Prejudiced.**

*1. Standard of Review*

This Court reviews a military judge's ruling on an objection to a victim's unsworn statement for abuse of discretion.[13] "Abuse of discretion occurs when the military judge: (1) bases a ruling on findings of fact that are not supported by the evidence; (2) uses incorrect legal principles; (3) applies correct legal principles in a clearly unreasonable way; or (4) does not consider important facts."[14]

When a military judge has abused his discretion in rejecting objections to a victim's unsworn statement, the Court will grant relief only if the Court is persuaded that the victim impact statement "substantially influenced the adjudged sentence."[15] In determining whether improperly admitted evidence substantially influenced a sentence, this Court considers four factors: "(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question."[16]

---

[11] R. at 283.

[12] AE XV; R. at 264.

[13] *United States v. Campos*, 85 M.J. 310, 314 (C.A.A.F. 2025) (citing *United States v. Hamilton*, 78 M.J. 335, 340 (C.A.A.F. 2019)).

[14] *Id.* (quoting *United States v. Ramirez*, 84 M.J. 173, 176 (C.A.A.F. 2024)).

[15] *Id.* (quoting *Hamilton*, 78 M.J. at 342-43).

[16] *Hamilton*, 78 M.J. at 343.

The meaning of "crime victim" under R.C.M. 1001(c) is a question of law that this Court reviews de novo.[17] R.C.M. 1001(c)(2)(A) defines "crime victim" as "an individual who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense of which the accused was found guilty or the individual's lawful representative or designee appointed by the military judge under these rules."[18] Article 6b, UCMJ, similarly defines a victim as "an individual who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense under this chapter."[19] A victim has the right to be reasonably heard at sentencing hearing relating to the offense.[20] Any individual who meets these criteria has rights as a victim under R.C.M. 1001(c); the person need not be a named victim on the charge sheet, or a named victim's designee under Article 6b.[21]

*2. Analysis*

Appellant argues that parents may only be considered crime victims under R.C.M. 1001 if they would otherwise qualify as Article 6b(c) designees.[22] Appellant seeks a bright line rule preventing "limitless extension to indirect, collateral, attenuated people" giving victim impact statements. We decline to delineate the outer limits of R.C.M. 1001(c) in this case.[23]

PFC R. provided his own victim impact statement through a VLC. PFC R.'s mother's statement largely focused on the harm caused to her son, but also mentioned the effect on her. She recounted her son's behaviors and personality traits before and after Appellant's crimes, emphasizing the impact the misconduct had on him. PFC R.'s father's statement had a slightly more pointed view on the turmoil he felt in response to Appellant's actions towards his son. Spe-

---

[17] *Campos*, 85 M.J. at 314 (citing *United States v. Edwards*, 82 M.J. 239, 243 (C.A.A.F. 2022)).

[18] Rule for Courts-Martial (R.C.M.) 1001(c)(2)(A).

[19] 10 U.S.C. § 806b(b).

[20] 10 U.S.C. § 806b(a)(4)(B).

[21] *Miller*, 82 M.J. at 790.

[22] Appellant's Reply Brief at 3.

[23] We acknowledge that there are some logical limits to R.C.M. 1001(c). For example, not every taxpayer could be classified as a victim under Article 6b in the case of theft of government property.

cifically, he explained how Appellant's conduct had caused an "emotional terror" on him as a father and the burdensome strain placed on and his marriage.[24]

Separate from a crime victim's right to be reasonably heard under R.C.M. 1001(c), the government may present evidence in aggravation, including evidence of financial, social, psychological and medical impact to any person who was a victim of a crime committed by the accused.[25] The facts contained statements from PFC R.'s mother and father would have been admissible in aggravation because they both discussed the psychological impact on their child as well as the financial and psychological impacts on them. The plea agreement waived objections to documents on the basis of hearsay, authenticity, or foundation.[26] Thus, written statements would have been admissible. Additionally, the materiality of the parents' victim impact statements are relatively low in the context of this sentence. Appellant pleaded guilty to eight specifications of misconduct across six charges including two Article 120 offenses. Additionally, there were six named victims on the Appellant's charge sheet.[27] After the military judge permitted PFC R.'s parents' statements, he addressed that such statements were not evidence and indicated on the record he would give these statements the appropriate weight they deserved. Accordingly, we find no prejudicial error here.

## B. The Sentence is Not Inappropriately Disparate With the Sentence His Co-Actor Received in a Closely Related Case.

### 1. Standard of Review

We review sentence appropriateness de novo.[28] Our power to review a case for sentence appropriateness includes (but is not limited to) considerations of uniformity and evenhandedness of sentencing decisions.[29] Generally speaking,

---

[24] Appellate Exhibit XXXIII at 6.

[25] R.C.M. 1001(b)(4).

[26] App. Ex. XV at para. 8(d) at 23.

[27] Charge Sheet.

[28] *United States v. Lane,* 54 M.J. 1, 2 (C.A.A.F. 2006).

[29] *See United States v. Sothen,* 54 M.J. 294, 296 (C.A.A.F. 2001). This is one of the equitable powers conferred upon the Service courts of criminal appeals by statute.

neither Article 66, UCMJ, nor caselaw requires us to engage in sentence comparison with specific cases.[30] However, this general rule is subject to one exception: we are required to engage in sentence comparison in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.[31]

It is in this context that the CAAF has spelled out the analytical approach we must employ when confronted with a claim that the sentences in two cases are disparate. An appellant bears the burden of demonstrating that any referenced cases are "closely related" to his or her case and that the sentences are "highly disparate." If the appellant meets that burden (or if the Court raises the issue *sua sponte*), then the Government must show that there is a rational basis for the disparity.[32]

In *United States v. Lacy*, the CAAF explained cases are "closely related" when, for example, they include "[1] co-actors involved in a common crime, [2] servicemembers involved in a common or parallel scheme, or [3] some other direct nexus between the servicemembers whose sentences are sought to be compared."[33]

### 2. Analysis

Appellant contends Appellant and Private A.'s cases are closely related because this case fits within all three *Lacy* categories.[34] For its part, the Government concedes that Private A. was involved in five of the eight offenses that Appellant pleaded guilty to, but cavils that Appellant's and Private A.'s cases are not closely related.[35] We have no trouble concluding that Appellant's and Private A.'s cases are closely related, especially as Private A's case was listed as a companion case on the convening authority's Action.[36]

---

[30] *See, e.g.*, *United States v. Behunin*, 83 M.J. 158, 161-62 (C.A.A.F. 2023); *see also United States v. Noble,* 50 M.J. 293, 294 (C.A.A.F. 1999).

[31] *Id.* at 162 (quoting *Sothen*, 54 M.J. at 296).

[32] *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999); *see also United States v. Swisher,* 85 M.J. 1 (C.A.A.F. 2024).

[33] *Lacy*, 50 M.J. at 288.

[34] Appellant's Brief at 20-24.

[35] Government's Brief at 19-21. In fact, it was Private A. who held PFC R. down while Appellant spread his buttocks and spit on his anus. R. at 168.

[36] convening authority's Action at 2.

That said, although Private A. received a lighter sentence than Appellant, we do not conclude that the two sentences are highly disparate. Further, there is a rational basis for any disparity. Unsurprisingly, a co-actor, as in this case, who cooperates with the Government and strikes a deal with the convening authority *before* the other accused would ordinarily receive more favorable terms. Moreover, Appellant did not have identical charges as Private A. In fact, Appellant pleaded guilty to specifications and charges of abusive sexual contact, indecent conduct, and violation of a lawful general order. Appellant's sentence is not highly disparate from Private A.'s, but, regardless, there is a rational basis for any disparity that may exist.

## C. Appellant's Sentence is Not Inappropriately Severe.

### 1. Standard of Review

Sentence appropriateness is reviewed de novo.[37] The review requires an "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender."[38] A court-martial may adjudge any punishment authorized, except "[i]f the military judge accepts a plea agreement with a sentence limitation, the court-martial shall sentence the accused in accordance with the limits established by the plea agreement."[39]

### 2. Analysis

We are unmoved by Appellant's argument that the sentence was inappropriately severe. Nor is it plainly unreasonable. Appellant was convicted, consistent with a plea agreement, of two specifications of abusive sexual contact, one specification of indecent conduct, four specifications of violating a lawful general order, and one specification of assault consummated by a battery.[40] For those charges, he faced over 27 years in confinement.[41]

The convening authority and Appellant agreed to give the military judge discretion on confinement sentencing. The plea agreement provided the military judge discretion to adjudge the amount of confinement between the range

---

[37] *Lane*, 64 M.J. at 2.

[38] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citation and internal quotation marks omitted).

[39] R.C.M. 1002(a)(2).

[40] Charge Sheet; R. at 273.

[41] R. at 237.

of 30 and 72 months.[42] The sentence was within this range. And, when questioned by the military judge, Appellant affirmed that he had read the plea agreement, that he had discussed with his defense counsel, and that he voluntarily agreed to the term.[43] All of this was to receive the benefit of his bargain. The record therefore shows Appellant's punishment was the foreseeable result of the plea agreement that he negotiated and voluntarily entered into with the convening authority.

A sentence cannot be inappropriately severe solely on the basis that an appellant hoped for a lighter sentence within the sentencing window.[44] We are also unmoved by Appellant's argument the military judge's sentence is too harsh. Due to the egregious nature of Appellant's crimes, the military judge's awarding of 53 months' confinement, forfeiture of all pay and allowances, and a dishonorable discharge was wholly appropriate.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact, and that no error materially prejudicial to Appellant's substantial rights occurred.[45]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[42] R. at 264.

[43] R. at 267-68.

[44] *See generally United States v. Avellaneda*, 84 MJ 656, 663 (N-M. Ct. Crim. App. 2024) ("[A]lthough not dispositive, when an accused who is represented by competent counsel bargains for a specific sentence, that is strong evidence that the sentence is not inappropriately severe and it will likely not be disturbed on appeal").

[45] Articles 59 & 66, UCMJ.