*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, GANNON, and FLINTOFT
Appellate Military Judges

———————————————

**UNITED STATES**
*Appellee*

**v.**

**Zacharia T. BRECHBIEL**
Airman Recruit (E-1)
U.S. Navy

*Appellant*

**No. 202500090**

———————————————

Decided: 24 April 2026

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Philip J. Hamon

Sentence adjudged 6 December 2024 by a general court-martial tried at Naval Base San Diego, San Diego, California, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for sixteen years, forfeiture of all pay and allowances, and a dishonorable discharge.[1]

---

[1] Appellant was credited with 212 days of pretrial confinement credit.

For Appellant:
*Lieutenant Commander Meggie C. Kane-Cruz, JAGC, USN*

For Appellee:
*Lieutenant Michael G. Osborn, JAGC, USN*
*Major Mary Claire Finnen, USMC*

———————————————

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

———————————————

PER CURIAM:

Appellant was convicted, consistent with his pleas, of two specifications of sexual assault in violation of Article 120 of the Uniform Code of Military Justice (UCMJ), one specification of kidnapping in violation of Article 125, UCMJ, and one specification of aggravated assault by strangulation in violation of Article 128, UCMJ.

Appellant asserts a single assignment of error (AOE): whether 16 years' confinement is inappropriately severe in light of Appellant's remorse, acceptance of responsibility, rehabilitative potential, and the military judge's recommendation to suspend 6 years of confinement.

## I. BACKGROUND

On 11 September 2023, Appellant went to dinner with friends. One of his friends invited Culinary Specialist Seaman Apprentice (CSSA) J.M., whom Appellant had met briefly on a few prior occasions, but had not interacted with at length. After dinner, the group went to the beach to socialize with friends. During this timeframe, CSSA J.M. consumed alcohol at dinner and at the beach. While at the beach, CSSA J.M. "pass[ed] out in the back seat of [Appellant's] car due to drinking too much alcohol."[2]

The group of friends, along with an unconscious CSSA J.M., drove back to Naval Base Coronado where their ship was moored. When they returned to the

———————————

[2] Pro. Ex. 8 at 1-2.

pier, Appellant's friends left the car and asked Appellant to drive CSSA J.M. back to her ship, which was moored at a different pier.

Appellant instead drove the unconscious CSSA J.M. to a parking lot, got out of the driver seat, moved some items from the back seat into the trunk, moved her phone and vape into the car's console, pushed the passenger seat forward, and laid CSSA J.M. (who was still unconscious) across the back seat of the car. Appellant then got into the back seat with her, unbuckled her belt, pulled down her pants, and inserted his fingers into her vulva. At the time he inserted his fingers into CSSA J.M., he knew she was asleep.[3] He explained CSSA J.M. was "not moving, nor did she appear to awaken when I laid her down in the back seat or pulled down her pants."[4]

After he had penetrated CSSA J.M.'s vulva with his fingers, he pulled down his own shorts and began to penetrate her vulva with his penis. He stated that while penetrating CSSA J.M.'s vulva with his penis, "she was still asleep at the time. Her eyes were still closed and she was not moving . . ."[5] After approximately 15 minutes she woke up, realized Appellant was on top of her, pushed him off, and screamed at him to let her go. Despite her protests, Appellant "attempted to put his penis back into her but she was pushing him away."[6]

CSSA J.M. begged for her phone and vape and tried to exit Appellant's car. In response, Appellant slapped her hand away from the door handle, closed and locked the car door, told her "no," and proceeded to grab her and hold her in the back seat to prevent her from escaping. Appellant explained he did so because he believed if she "escaped," she would report him for sexual assault. Appellant then continued to grab CSSA J.M.'s throat with both hands and squeezed with as "much force as [he] could,"[7] describing the force as a level 10 out of 10.[8] He strangled CSSA J.M. for several minutes while she was attempting to slap Appellant away and begging him to stop.

---

[3] R. at 85.

[4] Pros. Ex. 1 at 2.

[5] Pros. Ex. 1 at 2.

[6] Pros. Ex. 8 at 2.

[7] Pros. Ex. 1 at 3.

[8] Pros. Ex. 8 at 2.

Appellant was subsequently charged with four specifications of sexual assault,[9] one specification of kidnapping, one specification of aggravated assault by strangulation, one specification of making a false official statement, and one specification of unauthorized absence terminated by apprehension.

Appellant entered into a plea agreement with the Office of Special Trial Counsel. Appellant agreed to plead guilty to two specifications of sexual assault of a sleeping person, kidnapping, and aggravated assault by strangulation. In exchange for his pleas of guilt, the special trial counsel agreed to dismiss the remaining charges and specifications, including the two remaining violations of Article 120.[10]

The parties agreed the military judge would sentence Appellant to 16 years' confinement (16 years for each specification of sexual assault and 5 years for each specification of kidnapping and aggravated assault, all of which would run concurrently), a dishonorable discharge, forfeiture of all pay and allowances, and reduction to E-1. The military judge was not authorized to adjudge any fines nor any other lawful punishment.

During the announcement of the sentence, the military judge noted,

> This Court recommends that for both Specification 1 and Specification 2 of Charge I (Sexual Assault) that 6 years be suspended for a period of 1-year. The court balanced the nature, circumstances, and seriousness of the convicted offenses and the impact of these offenses on the victim . . . the fairly short time span . . . [and] the sincere and candid acceptance of responsibility by the Accused . . . . [G]iven the totality of the circumstances in this case, this court finds that a sentence of 10 years confinement would be sufficient, but not greater than necessary to promote justice and maintain good order and discipline in the United States Armed Forces.[11]

This statement was also submitted to the convening authority via Appellant's clemency request. The convening authority ultimately did not accept the military judge's recommendation and took no action on the findings and approved the sentence as adjudged. Other relevant facts are incorporated below.

---

[9] Two specifications of sexual assault of a person who is asleep, one specification of rape by threatening or placing in fear, and one specification of aggravated sexual contact by threatening or placing in fear.

[10] Plea Agreement, App. Ex. XXVII.

[11] R. at 177-78.

## II. DISCUSSION

**Sixteen years of confinement is not inappropriately severe.**

*1. Standard of Review*

We review sentence appropriateness de novo.[12] This review requires an "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender."[13]

*2. Analysis*

A court-martial may adjudge any punishment authorized, except "[i]f the military judge accepts a plea agreement with a sentence limitation, the court-martial shall sentence the accused in accordance with the limits established by the plea agreement."[14] Appellant contends "sixteen years of confinement is overly severe and unwarranted in light of the circumstances surrounding the offenses."[15] Appellant further contends that although the military judge did not reject the plea agreement, "he obviously found the sentence was unreasonable" because the military judge opined that the "sentence of 10 years confinement would be sufficient, but not greater than necessary to promote justice and maintain good order and discipline."[16] But the military judge never found that 16 years was "unreasonable," and we decline to draw that inference.

An appellant's agreement to a specific sentence is a reasonable indication of its probable fairness.[17] Also, Appellant did not argue at trial that 16 years confinement was "inappropriately severe." During the providence inquiry, Ap-

---

[12] *United States v. Lane,* 54 M.J. 1, 2 (C.A.A.F. 2006). Because the misconduct to which Appellant pleaded guilty occurred prior to 27 December 2023, the version of Article 66(d)(1), UCMJ, codified at 10 U.S.C. § 866(d) (2018) applies here.

[13] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citation and internal quotation marks omitted).

[14] R.C.M. 1002(a)(2).

[15] Appellant's Brief at 11.

[16] Appellant's Brief at 11.

[17] *See, e.g.*, *United States v. Arroyo*, 86 M.J. 89, 93 (C.A.A.F. 2025); *United States v. Avellaneda*, 84 M.J. 656, 663 (N-M. Ct. Crim. App. 2024); *United States v. Martinez*, No. 202100206, 2022 CCA LEXIS 693, at *8 n.27 (N-M. Ct. Crim. App. Nov. 29, 2022) ("We question Appellant's claim of inappropriate severity when the sentence he received was within the range of punishment he was expressly willing to accept in exchange for his pleas.").

pellant explained that he willingly and voluntarily entered into a plea agreement with specifically negotiated sentencing terms and conditions (one of which was 16 years confinement).[18] He also affirmed he understood he was "bound by the terms of [the] agreement," had enough time to discuss with his defense counsel, and was satisfied with defense counsel's advice throughout the process.[19]

As our superior court has held, this Court has the discretion to review the appropriateness of the adjudged sentence, but it may not engage in acts of clemency.[20] We find that 16 years of confinement is not inappropriately severe given the nature of the offenses and the manner in which the Appellant committed them.

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[21]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[18] R. at 133.

[19] R. at 132.

[20] *United States v. Nerad*, 69 M.J. 138, 145 (C.A.A.F. 2010).

[21] Articles 59 & 66, UCMJ.